UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-60590-CIV-COHN

GARETH GARDINER,

Magistrate Judge Snow

    Plaintiff,

vs.

NOVA SOUTHEASTERN UNIVERSITY, INC.,

    Defendant.
_____/

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**
**ORDER GRANTING MOTION TO EXCLUDE NON-ECONOMIC DAMAGES**

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [DE 19]. The Court has carefully considered the motion and is otherwise fully advised in the premises. The motion became ripe on December 12, 2006.

I. BACKGROUND

Plaintiff Gareth ("Gary") Gardiner ("Plaintiff") filed this action against his former employer, Nova Southeastern University, for discrimination under the Rehabilitation Act due to his disability. Plaintiff was suspended and eventually terminated by Defendant in May, 2004. Professor Gardiner taught at the School of Business at Nova since 1995, starting as an adjunct professor and becoming a full-time associate professor in June, 1998. In April, 2003 his divorce became final. Starting around that time, Defendants assert that he began missing meetings and exhibiting physical signs of alcohol abuse. Plaintiff denies these assertions, and Plaintiff continued to teach during the summer of 2003 and the fall of 2003.

On October 17, 2003, Associate Dean Preston Jones spoke with Plaintiff by

telephone stating that he wanted to meet with Plaintiff to discuss concerns that Plaintiff was an alcoholic, following several attempts by email to arrange a meeting regarding dissertation reviews.  No meeting was ever held between Dr. Jones and Dr. Gardiner in the fall of 2003.  On January 22, 2004, Dr. Jones visited Plaintiff at his home, arriving unannounced.  Dr. Jones testified that he found Plaintiff reading dissertations and appearing to be drinking.  Based upon reports of Plaintiff's appearance at work, his behavior and his lack of communication, Dr. Jones placed Plaintiff on medical leave on January 24, 2004.[1]  Dr. Jones also testified that he offered to help Plaintiff get counseling by giving him the Employee Assistance Program information.

On February 14, 2004, Dean Randolph Pohlman of the Business School happened upon Plaintiff at the School and described Plaintiff as looking horrible.  Dean Pohlman reported that Plaintiff told him he had started in treatment but was still drinking.  Plaintiff denies admitting any problem to Dr. Jones or Dean Pohlman and denies that his appearance was unprofessional for a Saturday.

On March 11, 2004, Defendant sent Plaintiff a letter requiring the return of a Leave of Absence form and a physician's certification that Plaintiff can return to work. Exhibit A to Affidavit of Claudette Chin Loy, Exhibit K to Defendant's Motion [DE 21-13]. The letter stated that  Plaintiff was placed on leave effective January 8, 2004, and that Plaintiff must return the forms by April 11, 2004 or he would be deemed to have

---

[1] The Court notes that the March 11, 2004 letter from the Benefits Specialist at Nova's Office of Human Resources states that Plaintiff was placed on leave effective January 8, 2004. Exhibit A to Affidavit of Claudette Chin Loy, Exhibit K to Defendant's Motion [DE 21-13].

2

voluntarily resigned.  On May 3, 2004, Defendant again wrote to Plaintiff stating that he was terminated as of that date for failure to return the forms sent on March 11, 2004.

Following a period of discovery, Defendant has moved for summary judgment on the Rehabilitation Act claim.  Defendant's motion was supported by Plaintiff's deposition and various affidavits of other professors and administrators at the business school.  Plaintiff filed a response followed by Defendant's reply.

## II. DISCUSSION

### A.  Summary Judgment Standard

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The stringent burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The Court should not grant summary judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and any doubts in this regard should be resolved against the moving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact."  Celotex Corp., 477 U.S. at 323.  To discharge this burden, the movant must point out to the Court that there is

an absence of evidence to support the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  According to the plain language of Fed. R. Civ. P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim.  Anderson, 477 U.S. at 257.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted."  Anderson, 477 U.S. at 249-50.

### B.  Rehabilitation Act

As of 1992, claims for employment discrimination under the Rehabilitation Act are analyzed using the standards developed for claims under the Americans with Disabilities Act ("ADA").  Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002) (citing 29

U.S.C. § 791(g)).[2]  To establish a prima facie case of discrimination under the ADA, a plaintiff must show that he: 1) has a disability; 2) is a qualified individual; and 3) was unlawfully subjected to discrimination because of the disability.  42 U.S.C. § 12112(a); Talavera v. School Board of Palm Beach County, 129 F.3d 1214, 1217(11th Cir. 1997).  In this case, Defendant argues that Plaintiff cannot meet his prima facie case, as he was not terminated solely because of his disability, but because he did not submit a leave of absence from and physician's statement as required by Defendant's return to work agreement under the Family Medical Leave Act ("FMLA").  In its reply memorandum, Defendant asserts that Plaintiff is not a qualified individual, and cannot establish that his termination was discriminatory as he was provided reasonable accommodations.

Under the ADA, "Disability" is defined as: A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; B) a record of such impairment; or C) being regarded as having such an impairment.  42 U.S.C. § 12102(2).  Pritchard v. Southern Company Services, 92 F.3d 1130, 1133 (11th Cir. 1996), *cert denied*, 117 S.Ct. 2453 (1997).  There appears no factual dispute that Defendant treated Plaintiff as though he was an alcoholic, and therefore for purposes of summary judgment, the Court concludes that Plaintiff was regarded by Defendant as

---

[2] Rehabilitation Act claims are only available against a Defendant that operates a program that receives federal funds.  There is no dispute that Plaintiff's claim against Defendant arises under the Rehabilitation Act.

having an impairment.[3]

### 1. Qualified Individual

Defendant seeks this Court to conclude on summary judgment that Plaintiff was not qualified to perform the essential functions of his job as an associate professor at Nova's business school primarily because of some negative student evaluations and because of his lack of communication with the school regarding his service on the dissertation evaluation committee.

Whether a job function is considered essential is a fact intensive inquiry with several factors. The Eleventh Circuit has stated that:

> the statute [ADA] provides, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); *see also Holbrook v. City of Alpharetta,* 112 F.3d 1522, 1526 (11th Cir.1997). "The ADA regulations provide that other factors to consider are: (1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs." *Davis [v. FPL],* 205 F.3d [1301] at 1305 (citing 29 C.F.R. § 1630.2(n)(3)).
> These regulations also identify three (nonexclusive) bases on which a job function may be deemed essential: "(1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function." *Holbrook,* 112 F.3d at 1526 (citing 29 C.F.R. § 1630.2(n)(2) (1996)).

---

[3] In fact, Defendant has submitted affidavits or declarations from seven (7) individuals all indicating that they personally had contact with Plaintiff and he exhibited symptoms of alcohol abuse. See DE 21-6 through 21-11, and 21-13.

D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1230 (11th Cir. 2005).

Plaintiff argues in opposition to the motion for summary judgment that the single essential function of an associate professor is to teach.  It is undisputed that through the summer and fall semester of 2003, Plaintiff continued to teach courses.  While Defendant points to negative comments within the Fall 2003 student evaluations of Plaintiff, Plaintiff has submitted several positive comments from the same semester.  Teaching Evaluations, attached to Plaintiff's Response [DE 22-3 to 22-6].   Clearly teaching is the primary function of an associate professor, and whether Plaintiff was qualified to teach is a disputed issue of material fact.

Defendant asserts that another essential function of an associate professor is to participate on dissertation review committees.  Defendant asserts that Plaintiff's complete failure to communicate with Associate Dean Jones through the fall semester amounted to the inability to perform an essential function of his job.  Plaintiff asserts that he communicated his concerns regarding plagiarized work to Dr. Jones and Dean Pohlman on various occasions.  Deposition of Gareth Gardiner at pp. 101, 109, Exhibit A to Defendant's Motion for Summary Judgment [DE 21-2 to 21-3]; Gardiner Declaration, ¶ 5, Exhibit to Plaintiff's Response [DE 22-2].

On the issue of what are essential functions of the job, Defendant has put forth by declaration its job description, which states that the primary teaching function is faculty teaching, but "an additional major role" is active participation in doctoral dissertation committees.  Exhibit A to Affidavit of Preston Jones, Exhibit B to

Defendant's Motion [DE 22-5]. Defendant puts forth the testimony of Associate Dean Jones and an affidavit of Dr. Timothy McCartney that Plaintiff did not respond to attempts to contact him during this time period. There is little evidence regarding the other factors discussed by the Eleventh Circuit in D'Angelo, as far as the amount of time spent on dissertation committees and how many of the associate professors are needed to perform this task. It does seem common sense that professors are not hired because of how they grade dissertations, though next to classroom teaching, the position does exist in some way to review dissertations in the graduate school system.

The Court concludes that whether active participation on a dissertation review committee is an essential function of an associate professor is a question of fact that cannot be resolved on the present record of this case. In addition, even if the Court were to conclude as a matter of law that such function was essential, Plaintiff has put forth sufficient facts to create a genuine issue of disputed fact as to whether he fulfilled this qualification.

## 2. Reasonable Accommodation

Defendant asserts that it provided Plaintiff with reasonable accommodation for his disability by placing him on paid medical leave and providing him with the phone number for counseling through Nova's Employee Assistance Program. Plaintiff does not address the reasonable accommodation issue as it asserts that the Rehabilitation Act requires that once Defendant demonstrates that the disability at issue is relevant to the job qualifications, Plaintiff must then prove that he is qualified despite the disability. However, Plaintiff does assert that Defendant terminated Plaintiff because of his

8

disability.

This Court will follow the ADA line of cases for this employment discrimination claim under the Rehabilitation Act. 29 U.S.C. § 791(g). "Discriminate," in the ADA context, is defined as including "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee . . . ." 42 U.S.C. § 12112(b)(5)(A). The decision in D'Angelo obligates a defendant to make reasonable accommodations even in an "as regarded" disability situation such as the present case. D'Angelo, 422 F.3d at 1235-36. As mentioned above, Defendant did make counseling available and initially suspended Plaintiff by placing him on involuntary medical leave and allowing him to use his available sick, personal and vacation time.[4] Plaintiff did not respond to Defendant's March 11, 2004 letter requesting a physician's statement that Plaintiff could return to work. Defendant asserts that it terminated Plaintiff for failure to return the physician's statement, an allowed procedure under the FMLA.

Plaintiff argues that the question whether Defendant terminated Plaintiff because of his disability must be answered in the affirmative, and not narrowed to the question of whether Plaintiff returned the proper form. Plaintiff argues that Defendant's inaccurate perceptions of his disability and qualifications led to his summary suspension on January 24, 2004. Plaintiff believed he was already terminated. As described above, Defendant did not contact Plaintiff regarding the requirement of the

---

[4] Nova did not provide Plaintiff with any additional paid leave to which he was not already entitled. At some point, Plaintiff's paid leave ended and he was on unpaid leave.

physician's form until nearly seven weeks later.   Without using the term, Plaintiff asserts that the issue of not returning the form is a pretext for Defendant's disability discrimination in that the casual connection between returning the medical certification and the unilateral involuntary placement on leave due to a perceived handicap shows Defendant did rely upon Plaintiff's disability in his ultimate termination.

The Court notes that a failure to make reasonable accommodations is one way in which disability discrimination can take place but not the only way.  42 U.S.C. § 12112(b).   Suspension and/or termination of an employee "in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee" is also discrimination.  42 U.S.C. § 12112(b)(1).  The Court cannot conclude as a matter of law that no discrimination took place here.  While Defendant made attempts to reach out to Plaintiff after his summary suspension, the record reflects that Plaintiff continued to perform his job throughout the period just up until his suspension, though those facts remain in dispute.  As such, the motion for summary judgment on Plaintiff's claim is denied.

### C.  Damages under Rehabilitation Act

Defendant also asserts in its motion that Plaintiff is not entitled to non-economic damages or punitive damages under the Rehabilitation Act.  The remedies available under the Rehabilitation Act are those "set forth in Title VI of the Civil Rights Act of 1964."  <u>Waldrop v. Southern Co. Services, Inc.</u>, 24 F.3d 152, 155 (11th Cir. 1994).  Plaintiff asserts that a claim for compensatory damages is allowed under the Rehabilitation Act, but does not address Defendant's argument that non-economic

damages are not.

The Supreme Court has clarified the scope of "appropriate relief" in its holding in Barnes v. Gorman, 536 U.S. 181, 189 (2002), wherein the Court held that punitive damages are not allowed in a private suit under the Rehabilitation Act.  In so holding, the Court concluded that a suit under a statute enacted pursuant to Congress' Spending Clause authority (such as Title IX and the Rehabilitation Act), is actually a contract-like action against an entity that fails to provide the contractual service. Barnes, 536 U.S. at 186-87.  The Court concluded that only compensatory damages for failing to provide the contractual obligation are recoverable.  Id. at 189.  Therefore, Defendant argues that non-economic damages are not recoverable under a Rehabilitation Act claim, such as Plaintiff's claim in this case.

Defendant cites to Witbeck v. Embry-Riddle Aeronautical Univ., Inc., 269 F.Supp. 2d 1338, 1340 (M.D.Fla. 2003), which followed Barnes and denied claims for mental anguish, damage to reputation, embarrassment and humiliation under the Rehabilitation Act.  The Court acknowledges that the Witbeck decision mistakenly concludes that the "Barnes Court found that its decision in Franklin v. Gwinnett County Public School did not apply to Rehabilitation Act causes of action."  269 F.Supp. 2d at 1340 n.1.  The Barnes court did not make such a declaration.  Nonetheless, the Witbeck Court's analysis of the competing pre-Barnes district court decisions on the issue of whether emotional distress damages are available under the Rehabilitation Act remains accurate.  269 F.Supp.2d at 1340.  Therefore, this Court concludes that emotional distress type damages and punitive damages are not available to a

Rehabilitation Act plaintiff.

### III.  CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [DE 19] is hereby **DENIED** as to Plaintiff's Rehabilitation Act claim;

2. Defendant's Motion for Summary Judgment [DE 19] is hereby **GRANTED** as to the requested remedies of punitive damages and non-economic compensatory damages, including claims for mental anguish, damage to reputation, embarrassment and humiliation under the Rehabilitation Act.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this _____ day of December, 2006.

/s/ James I. Cohn
JAMES I. COHN
United States District Judge

copies to:

all counsel of record